IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 2:15-cr-00168 |
| | ) |
| FREDERICK H. BANKS | ) Judge Mark R. Hornak |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

The Defendant has filed a *pro se* Motion, ECF No. 608, purportedly pursuant to 28 U.S.C. §§ 144 and 455. For the following reasons, the Motion is denied:

1. As to any effort to seek relief pursuant to 28 U.S.C. § 144, the Motion is denied. The docket reflects that contrary to the Defendant's assertions, the Defendant has at all times been represented by counsel, including in relation to the withdrawal of his prior counsel, Mr. Roe. *See* ECF No. 573. The Memorandum Order relieving Mr. Roe from further representational duties was by its provisions not effective until new counsel, Mr. Miller, had entered his appearance. ECF No. 594. The Motion is not accompanied by the certificate of Defendant's counsel as is required by 28 U.S.C. § 144, the Motion fails to comply with that statute, and is therefore denied.

2. As to the Motion to recuse, the Motion is denied, as the Defendant has advanced no factual or legal basis for recusal pursuant to 28 U. S. C. § 455. First, the Court harbors no actual bias as against the Defendant, and the Court is aware of no facts which would cause a reasonable observer to call the Court's impartiality into question. Further and more specifically:

   a) The Defendant correctly notes that the Court had raised with counsel and the Defendant the question of whether if a now-judicial officer of this Court, Hon.

Cynthia Reed Eddy, were to testify in this case, the judicial officers of this Court would be required to recuse from presiding over the trial of this matter. That issue is at this point purely hypothetical, as the Court has made no ruling on whether such testimony would even be relevant and material. The Defendant continuously refers to Judge Eddy's service as counsel to a witness in the now-concluded prior federal criminal proceeding against the Defendant seemingly as some sort of "justification" for conduct that he alleged engaged in as set out in the charging documents in this case. Any such testimony on such grounds appears at this juncture to be legally and factually irrelevant in any event, and the statements of prior counsel for the Government that he might consider calling Judge Eddy as a witness for purposes of proving the Defendant's motive would appear to relate to a matter that is not an element of any offense charged, and may therefore also be immaterial. The long and the short of it is that any such matters present no issue at this juncture (if they will present any issue at all[1]), and in no way call into question this particular judicial officer's ability to continue to preside over this case.

b) The Court has given notice to all counsel and the Defendant that upon learning that the Defendant has filed civil litigation against the Court's former law clerks, and the Court's Chief Court Reporter (along with the undersigned), in the Ohio State Courts, it referred those matters to the Administrative Office of the United States Courts to provide a defense, per standing Federal Judiciary policy. ECF No. 572. That civil litigation has now been dismissed, based on a prior Order of the Ohio Courts that barred the Plaintiff from filing those civil actions *ab initio*, ECF No. 590, and of which the Defendant failed to make reference when he filed those lawsuits. The Court gave such notice simply because it was likely that consistent with Federal Judiciary policy and federal law, the U.S. Attorney's Office for the Northern District of Ohio would become involved to seek and obtain the prompt dismissal of those actions on the grounds of absolute judicial immunity. Because like all of the other lawsuits filed by the Defendant against the undersigned in a multitude of federal courts the Ohio lawsuits appeared to the Court to be baseless on their face, and barred by judicial immunity, the Code of Conduct does not require this Court's recusal absent actual bias or (perhaps) the litigation proceeding forward on the merits, which is not present in this case. The reason the Court referred this particular litigation to the Administrative Office was that it named other current/former Court employees, and it appeared that the Ohio State Court was going to require some sort of on the merits or record response (which ended up not being required due to the prior Ohio State Court Order declaring the Defendant a

---

[1] Among the many reasons that there may be no issue is that presumably the trial of this matter will be before a jury, and among other things, this Court would have no involvement in judging the credibility of any witness at trial. Further, in its comprehensive Order denying bond in this case, ECF No. 501, the Court expressly disclaimed any consideration of the particular safety of Judge Eddy in making that bond decision. The Court would note however, if for instance a given criminal defendant posed a risk of serious harm to the judicial officers of the Court where the prosecution was pending, that would not necessarily require recusal. Otherwise, a defendant could easily "judge shop" by simply threatening the judge(s).

vexatious litigant, and barring his filing of litigation of this sort in the Ohio State Courts).

c) Further, the Court gave the same notice to counsel and the Defendant that it referred to the U.S. Marshal for this District the fact that the Plaintiff had filed involuntary federal bankruptcy petitions against those same former law clerks, based on his allegations that those law clerks were in debt to him based on their allegedly defaming him in regard to their perceived work with the Court on an Order of this Court filed at ECF No. 501, an Order that was issued months after they left the service of this Court. Those petitions were dismissed by the Bankruptcy Court, and given the nature of the Defendant's own allegations, it appeared that such petitions may have been filed by him in violation of 18 U.S.C. § 1521. Contrary to the Defendant's assertions, the Court did not make that referral based on perceived retaliation against the undersigned, but because the Court's former law clerks appeared to be covered persons under 18 U.S.C. § 1521, and the Defendant's own statements/conduct facially appeared to be retaliatory against them for the conduct of their official duties.[2] That referral to the Marshal of such matters is in conformity with the relevant directives pursuant to the Code of Judicial Conduct, and does not constitute a basis for this judicial officer to recuse. Further, the Defendant's Motion makes reference to this Court presiding over the disposition of any federal criminal charges stemming from that referral. To the Court's knowledge, no such charges have been filed, let alone assigned to this Court. Should those things happen, the Court will address the matter as appropriate at that time. The Court would also note that the Defendant has apparently sued this judicial officer in federal courts across the land, from Montana to Massachusetts, and has brought complaints against this officer to our Court of Appeals, and has litigated claims against this officer (and at times, in conjunction with claims against members of the Trump family, one or more members of Congress, the Pope, members of the Executive Branch, television news reporters, and assorted others). Consistent with the applicable Code of Conduct, the Court has not recused on the basis of those filings, in light of the facially baseless nature of those asserted claims and/or the reality that they were barred by judicial immunity.

d) The Defendant takes exception to this Court's referring to the Defendant's filing of a now-dismissed involuntary federal bankruptcy petition against his own lawyer, Mr. Roe, and his litigation against Mr. Roe in the State Courts of Ohio as "retaliatory." Given that the Defendant also filed such petitions against the two former law clerks as noted above, and against the lead case agent from the FBI in this case, and an unrelated employee of the U.S. Attorney's Office who has the same surname as that case agent, along with various civil suits against the prosecutor, his own lawyer and others, all facially based on his displeasure with their conduct in this case, at least one fair inference from such filings is

---

[2] In his Motion for Recusal, the Defendant avers that at the time he filed those involuntary bankruptcy petitions against this Court's former law clerks, he "verily believed" that those law clerks owed him a debt, a debt that they "were generally not paying." Based on the record, it appears that those assertions are facially absurd.

3

that they are part and parcel of an effort by the Defendant to get back at such people for perceived wrongs/slights, particularly as to the bankruptcy filings, which have a significant potential to harm the credit standing of those they were filed against. This is particularly so in that it appears that they were filed with no facially valid basis in law or in fact. Or, that they were filed to generate an actual "docket" conflict with Mr. Roe that would force Mr. Roe off of this case. On top of that, at the time the Defendant filed his State Court lawsuit against Mr. Roe in Ohio, the Defendant had already been barred by the Ohio State Courts from filing that action in that Court. Thus, at least one reasonable and fair inference from the Defendant's filings was that there were "retaliatory." In any event, the Court's characterization was legitimate, based on the statements and conduct of the Defendant himself, and is not the basis for recusal.

e) The Defendant next takes issue with the Court's acknowledgement that based on its observations, the Defendant's multitude of filed and otherwise expressed complaints as to and about Mr. Roe were baseless, and that it appeared to the Court that Mr. Roe was appropriately acting in his conduct as defense counsel. This Court had consistently declined to remove Mr. Roe from the case, as no factual basis for his removal was advanced to this Court, and the bases for such as advanced by the Defendant boiled down to his displeasure with Mr. Roe's advising the Court that there was a reasonable basis to call into question the Defendant's competence to stand trial (a "reasonable basis" assessment with which the Court independently agreed, as did the prosecution, and as did Dr. Heather Ross, a forensic psychologist with the Federal Bureau of Prisons, who opined that the Defendant was incompetent to stand trial), Mr. Roe's failure to litigate defenses posited by the Defendant based on CIA-based "Voice to Skull" technology, which the Defendant admitted under oath on the record has no factual relationship to his case (to the extent it is a "real" thing at all), and Mr. Roe's apparent unwillingness to relitigate as a defense in this case what Defendant says was law enforcement conduct in the investigation which led to the Defendant's now final criminal conviction in a prior federal prosecution. The Court's refusal to conclude that the Defendant's assertions of attorney misconduct or ineffective representation by Mr. Roe had any basis in fact or law was based solely on the Court's assessment of those matters as they appeared both on the record and in open Court and based on the Court's intimate familiarity with the record in this case. From the Court's perspective, at least based on what the Court could observe from the docket and in open Court, Mr. Roe did a commendable job in "battlefield conditions" created by the Defendant himself. There is no basis to recuse on these grounds.

f) As the Court has previously stated on the record, the Court has given no substantive consideration whatsoever to any proposed plea agreement between the Defendant and the Government, nor has it given any consideration to the fact that no such plea agreement has been accepted by the Defendant, in making its decisions as to the Defendant's competency to stand trial, or his competency to waive his right to counsel and represent himself. Thus, any recusal assertions made on such grounds have no record basis.

4

g) Boiled down, the Defendant's request for recusal is seemingly based on the hard reality that the Court has "called them as it sees them," at times in direct and unvarnished terms, in order to clearly and unequivocally address the massively repetitive nature of the overwhelming body of the Defendant's prolix, convoluted and at times fantastical *pro se* filings, and the fact that many (but not all) of those rulings have been contrary to the Defendant's desires. None of that is the basis for recusal.

The *pro se* Motion to Recuse is denied.

Mark R. Hornak
United States District Judge

Dated: March 5, 2018

cc: All counsel of record