IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 2:15-cr-00168 |
| v. | ) |
| | ) Chief Judge Mark R. Hornak |
| FREDERICK H. BANKS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

AND NOW, this 9th day of June, 2021, the Court hereby issues the following Order: Pending before the Court are two *pro se* Motions for Reconsideration (ECF Nos. 1422, 1426); a *pro se* Motion for Compassionate Release (ECF No. 1430); and a *pro se* Motion to Disclose FISA Electronic Surveillance Discovery (ECF No. 1416). For the following reasons, the Defendant's Motions are DENIED without prejudice.

**I.    BACKGROUND**

On January 12, 2016, a federal Grand Jury returned a seven-count Superseding Indictment against Mr. Banks, charging him with wire fraud in violation of 18 U.S.C. § 1343 and aggravated identity theft in violation of 18 U.S.C. § 1028A, among other things. (ECF No. 96.) Mr. Banks was found guilty by a jury at trial as to the wire fraud and aggravated identity theft counts and was sentenced to an aggregate of 104 months in custody, followed by a term of supervised release of three years. (ECF Nos. 1116, 1288.) Mr. Banks presently resides at FCI Allenwood Low. As of the date of this Order, the Bureau of Prisons ("BOP") lists Mr. Banks's release date as February 4, 2023.

### A. <u>Motions Seeking Compassionate Release</u>

The Court has twice denied Mr. Banks's *pro se* motions for compassionate release. (ECF Nos. 1316, 1418.) First, in July 2020, the Court denied his motion for release without prejudice because it concluded that Mr. Banks failed to establish "extraordinary and compelling" reasons for release. (ECF No. 1316.)[1] Next, in May 2021, the Court denied a subsequent compassionate release motion that Mr. Banks filed. (ECF No. 1418.) The Court again concluded that Mr. Banks did not establish extraordinary and compelling reasons that would warrant his release and also concluded that consideration of the § 3553(a) factors likewise would prohibit his release. (*Id.*)

In short order, Mr. Banks submitted multiple additional filings that again ask this Court to grant him compassionate release. First, on May 18, 2021, he submitted a single filing that was docketed both as a Motion for Reconsideration and a Notice of Appeal. (ECF No. 1422.)[2] He also filed a supplement in support of that motion. (ECF No. 1425.) Then, on May 21, 2021, Mr. Banks filed a second Motion for Reconsideration (this one not concurrently labeled as a Notice of Appeal), along with exhibits and another supplement. (ECF Nos. 1426, 1427, 1429.) And four days after that, on May 25, 2021, Mr. Banks submitted an entirely new Motion for Release/Reduced Sentence pursuant to CARES and/or First Step Act. (ECF No. 1430.) Given the mostly duplicative nature of these filings, the Court did not order the Government to respond to them. For the sake of completeness, the Court will summarize the contents of each filing.

### a. First Motion for Reconsideration and Related Filing (ECF Nos. 1422, 1425)

In Mr. Banks's initial motion for reconsideration, Mr. Banks first argues that the Court erred in concluding that consideration of the 18 U.S.C. § 3553(a) factors would not support his

---

[1] Mr. Banks appealed this decision, and the Third Circuit dismissed the appeal as untimely. (ECF No. 1432.)

[2] The Third Circuit docketed the Notice of Appeal on May 24, 2021. (ECF No. 1428.)

2

release. (ECF No. 1422.) For support, he cites his expected release date (which he claims is around six months from now when considering First Step Act credits) and classes he has taken while incarcerated. (*Id.*) He next contends that he establishes "extraordinary and compelling" circumstances for release because FCI Allenwood's COVID-19 safety protocol is inadequate. He argues that the fact that he is fully vaccinated is irrelevant because the vaccine only protects individuals for six months (and FCI Allenwood has no plans to administer "booster" shots) and the current vaccines are ineffective in fighting variants. (*See id.*; ECF No. 1425.) He also informs the Court of two health incidents that he experienced in May 2021, in which he says he vomited blood and later went into convulsions. (ECF No. 1425.) Finally, Mr. Banks complains that the Court did not appoint counsel as to this matter. (ECF No. 1422.)[3]

### b. Second Motion for Reconsideration and Related Filings (ECF Nos. 1426, 1427, 1429)

In his second reconsideration motion, Mr. Banks references court decisions about the role of the U.S.S.G. § 1B1.13 policy statement on compassionate release motions in contending that the Court erred in considering the § 3553(a) factors, and in considering Mr. Banks's prior fraud convictions in that analysis. (ECF Nos. 1426; *see also* ECF No. 1427.) In supplementing this motion, Mr. Banks asserts that if the Court were to grant his motion, he plans to move to Toronto,

---

[3] As explained in the Court's prior Order, the Court initially referred Mr. Banks's earlier *pro se* motion to Mr. Banks's then-counsel in this Court, Mr. Marvin Miller. (*See* ECF Nos. 1385, 1418.) Mr. Miller declined to file a counseled supplement. (ECF No. 1386.) Mr. Miller then withdrew from representing Mr. Banks. (*See* ECF No. 1387.) Though Mr. Banks is currently unrepresented in this Court, he is represented by appellate counsel in the Third Circuit relative to his appeal. The Court nonetheless also gave Mr. Banks's appellate counsel the opportunity to supplement Mr. Banks's compassionate release motion, but she opted not to do so. (*See* ECF No. 1399.) Per standard procedure, the Court additionally referred the matter to the Federal Public Defender, but that office also declined to supplement the motion. Given the contents of the motion and the Court's previous consideration of Mr. Banks's request for compassionate release, the Court did not, and does not, find it necessary to appoint counsel as to this matter at this time.

On a similar note, Mr. Banks recently wrote to the Court complaining that ever since Mr. Miller withdrew from the case, Mr. Banks has not been receiving a copy of every Order of the Court. (ECF No. 1431.) But according to staff notes on the docket, every single Order entered since Mr. Miller's withdrawal was mailed directly to Mr. Banks.

Canada. (ECF No. 1429.) According to Mr. Banks, this means that "there are no public safety concerns" because "the public" does not include foreign countries. (*Id.*) In accordance with this plan, Mr. Banks will "seek to change his supervised release to unsupervised release." (*Id.*)[4]

### c. Motion for Compassionate Release (ECF No. 1430)

In his final motion on the matter, Mr. Banks argues that the Court should grant his motion because he was allegedly retaliated against by FCI Allenwood staff after he applied for home confinement. (ECF No. 1430.) He says he lost 41 days of "good time" credit as a result.[5] (*Id.*) He contends again that he has high blood pressure, hypertension, heart disease, obesity, high cholesterol,[6] and, as noted above, was recently vomiting blood. (*Id.* at 3.) He also states that he is allergic to the high blood pressure medication that the prison gives him. (*Id.*) The rest of the motion provides substantially the same arguments put forth in the motions for reconsideration.

### B. Miscellaneous Filing

In April 2021, Mr. Banks filed a Renewed Motion for Disclosure of FISA Electronic Surveillance Discovery 50 U.S.C. § 1806(f) & Federal Rule of Criminal Procedure 16, in which he additionally moves for a hearing on the existence of microwave hearing and related technologies and a doctor's examination about high-pitch ringing in his ears. (ECF No. 1416.) Mr. Banks also filed an exhibit that he claims shows the BOP's acknowledgment that Mr. Banks was electronically harassed. (ECF No. 1421.)

---

[4] Mr. Banks also argues that the Government in the past agreed that Mr. Banks is not a danger to the public. (ECF No. 1426.) But in opposing Mr. Banks's compassionate release motion, the Government argued that a reduction in sentence would not serve to protect the public. (ECF No. 1393, at 11.)

[5] The Court notes that the public information available from the BOP reflects that Mr. Banks's expected release date has recently been pushed back. At some point since May 6, 2021 when the Court last denied Mr. Banks's motion for compassionate release, the expected release date of Mr. Banks changed from December 26, 2022 to February 4, 2023.

[6] Mr. Banks previously raised these alleged health conditions to the Court, and the Court already considered them when it denied his last compassionate release motion. (ECF No. 1418.)

Mr. Banks filed a substantially similar motion in June 2019. (*See* ECF No. 950.) At that time, the Court denied the motion without prejudice to its reassertion by Mr. Banks's counsel of record. (ECF No. 956.) The Court also noted that as Mr. Banks had previously stated on the record, Mr. Banks "possesses no evidence that he has personally been subjected to the application of electronic energy/stimulation by any external source, nor the voice to skull technology he has repeatedly referenced, nor does he do so here, nor has he demonstrated any relationship between any such things and his alleged culpability in these proceedings." (*Id.*)

## II. DISCUSSION

The Court will first address the motions that seek compassionate release and will then address the motion that seeks disclosure of FISA electronic surveillance discovery. For the reasons below, the Court will deny all filings.

### A. Motions Seeking Compassionate Release

Because the two Motions for Reconsideration and the Motion for Compassionate Release ask for the same type of relief, the Court will consider them together.[7] Ordinarily, motions for reconsideration are reviewed under the *Max's Seafood* standard. A party seeking reconsideration must show at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [dismissed the motion]; or (3)

---

[7] The Court recognizes that one of the motions for reconsideration was docketed as a Notice of Appeal. The Supreme Court has cautioned that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). And as a general rule, "the timely filing of a notice of appeal is an event of jurisdictional significance, immediately conferring jurisdiction on a Court of Appeals and divesting a district court of its control over those aspects of the case involved in the appeal." *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985) (citations omitted). But the "rule is a judge-made, rather than a statutory, creation," and as "a prudential doctrine, the rule should not be applied when to do so would defeat its purpose of achieving judicial economy." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988). Given that the multiple filings in this Court all ask for the same form of relief, and do so on similar bases, judicial economy and efficiency counsel this Court to rule on all pending motions, including the filing that is currently docketed before the Third Circuit (ECF No. 1422).

the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### a. Extraordinary and Compelling Circumstances

Parts of Mr. Banks's motions are limited to information and arguments that the Court already considered when it reviewed his initial motion for release. The Court previously concluded that Mr. Banks did not meet his burden to establish extraordinary and compelling reasons that would warrant his release. (ECF No. 1418.) The Court recognized that Mr. Banks's hypertension can make him more likely to get severely ill from COVID-19, but found that the record did not demonstrate that his hypertension is sufficiently persistent or significant so as to qualify as extraordinary and compelling on its own. The Court also noted that the record showed that Mr. Banks often refused to take his hypertension medication. The Court reviewed the full medical record and concluded that it did not support findings that Mr. Banks suffered from heart problems, obesity, or inadequate medical care. On top of this, the Court found that FCI Allenwood appeared to have in place adequate safety protocols intended to mitigate the spread of the COVID-19 virus within its facility. Finally, that Mr. Banks is fully vaccinated undercuts his COVID-19-related health concerns. The Court stands by its prior reasoning. Nothing that Mr. Banks raises now changes the Court's prior analysis on any of these points.

But the Court will respond in more detail to certain contentions. First, Mr. Banks mentions new health problems, primarily an incident when he allegedly vomited blood. There are no medical documents in the record about this incident nor any further information about what prompted it. Though concerning as a general matter, it is not a reason on its own to warrant compassionate release. The Court expects the medical facility at FCI Allenwood to treat Mr. Banks accordingly.

Second, Mr. Banks claims that he is allergic to his hypertension medicine, which he says gives him a rash. Though Mr. Banks does not say so explicitly, it seems that Mr. Banks's alleged/self-diagnosed allergy may contribute to Mr. Banks's history of refusing his hypertension medication. However, this again is an issue best sorted out by the FCI Allenwood medical staff, and it is unclear to the Court whether Mr. Banks has already raised these concerns with them.

Third, Mr. Banks raises heightened concerns about the vaccine's efficacy. He complains that the vaccine will only protect him for six months and FCI Allenwood won't give him a booster shot, and that the vaccine does not protect against variants. As to the first point, there is currently no system in place anywhere to provide vaccinated individuals with booster shots, and that is at least partially because there is no general scientific consensus about the need for such shots. *See* Lauran Neergaard, *Vaccine protection may diminish need for yearly boosters*, AP News, (June 2, 2021), https://apnews.com/article/us-news-coronavirus-pandemic-science-coronavirus-vaccine-health-d1c023524e87bbcf4add139ffcd349e9 ("Scientists have found clues that the world's leading COVID-19 vaccines offer lasting protection that could diminish the need for frequent booster shots, but they caution that more research is needed . . ."). At this time, booster shots are unavailable to everyone, not just people who are incarcerated at FCI Allenwood.

And as to the second point, the Moderna vaccine is still widely considered to have a high efficacy rate. *See Moderna COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control & Prevention (last updated May 27, 2021), https://bit.ly/3xKDY9E. To be sure, there remains a low risk that people who are fully vaccinated may still contract the virus. And there is always uncertainty about what may happen in the future, particularly with regards to virus variants. But future hypothetical concerns are not sufficient to establish extraordinary and compelling

circumstances. The Court's denial was, and is, without prejudice. If something changes regarding the vaccine's efficacy with respect to Mr. Banks, the Court may always reconsider this issue.

### b. 18 U.S.C. § 3553(a) Factors

But even if Mr. Banks's concerns were extraordinary and compelling enough for the Court to consider release, the Court's consideration of the § 3553(a) factors would still prohibit release of Mr. Banks. Nothing that Mr. Banks presents to the Court changes anything on this point.

The Court first addresses Mr. Banks's assertion that the Court erred in considering the § 3553(a) factors. Mr. Banks makes that argument based on recent non-precedential court decisions that held that the current provisions of the Guidelines and relevant Application Notes at U.S.S.G. § 1B1.13 are not controlling and limiting in the consideration of compassionate release motions. But those decisions do not stand for what he says they do; the Court is still required to consider the § 3553(a) factors when determining whether to grant compassionate release. The Court likewise appropriately considered his earlier convictions when assessing the § 3553(a) factors, which includes "the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1).

Mr. Banks other arguments fare no better. First, a compassionate release motion is not the appropriate vehicle to raise allegations of retaliation. Second, Mr. Banks's asserted plan to move to Canada is entirely speculative and baseless, not to mention premature. Mr. Banks claims he will seek to convert his three-year term of supervised release to a term of "unsupervised" release, based on his plan to move to Canada. Assuming a district court has authority to allow a defendant to serve his supervised release term abroad, it is not as if permission to do so extinguishes the "supervised" aspect of the supervised release term, which is part of the defendant's sentence. *See, e.g.*, *United States v. Pugliese*, 960 F.2d 913, 915 (10th Cir. 1992) (finding "no direct [legal] impediment" to authorizing a person on supervised release to live abroad so long as "the

supervision the judge believes is necessary can be enforced abroad"); *see also United States v. Porat*, 17 F.3d 660, 669 (3d Cir. 1994), *vacated on other grounds*, 515 U.S. 1154, (1995). Under certain circumstances, a sentencing court has the authority to terminate early a period of supervised release. *See* 18 U.S.C. § 3583(e). But the defendant must have served at least one year of supervised release before the Court can do so. *See id.* Mr. Banks has yet to be released from serving his term of imprisonment.

In sum, nothing of significance is new before the Court. The Court finds no basis for release or for reconsideration at this time and concludes that release is not warranted by the record.

### B. Miscellaneous Filing

The Court will also deny the Renewed Motion for Disclosure of FISA Electronic Surveillance Discovery and a Hearing. (*See* ECF No. 1416.) As the Court noted in the past, Mr. Banks has previously stated on the record that he "possesses no evidence that he has personally been subjected to the application of electronic energy/stimulation by any external source, nor the voice to skull technology he has repeatedly referenced, nor does he do so here, nor has he demonstrated any relationship between any such things and his alleged culpability in these proceedings." (ECF No. 956.) Mr. Banks now submits an exhibit of an email thread that he claims demonstrates that the "BOP acknowledges that Defendant may be being electronically harassed by the CIA but takes no action to prevent the harassment." (ECF No. 1421.) But the exhibit shows no such thing. In the email chain, Mr. Banks informs his case manager of his belief that he is being monitored by the CIA. (*Id.* at 2.) The case manager responded, "noted." (*Id.*) This confirmation of receipt does not represent the BOP's acknowledgment of any sort of electronic harassment. The record does not support the basis of Mr. Banks's motion and it will be denied.

### III.   **CONCLUSION**

The Court has considered all of Mr. Banks's compassionate release filings on the docket. The record before the Court does not support Mr. Banks's release. Mr. Banks's Motions on the matter (ECF Nos. 1422, 1426, 1430) are DENIED without prejudice, subject to its reassertion should circumstances warrant. Mr. Banks's Motion for Disclosure of FISA Electronic Surveillance Discovery (ECF No. 1416) is also DENIED without prejudice.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

cc:   All counsel of record